ELIZABETH O'KEEFE, Appellee, v. D. H. TALBOT, Appellant.

Agistment: CONTRACT: CONSTRUCTION. The defendant delivered to the plaintiff a number of cattle to keep and feed for one year, under an agreement that they should be brought through the winter in as good condition as possible, with the best of care and attention, without the feeding of grain except as therein provided, and guaranteeing the defendant against all loss or damage among said cattle, except by unavoidable accident. There was evidence tending to show that the loss of a number of the cattle was due to the poor condition they were in when received by the plaintiff, the severity of the winter, and that a number died by reason of huddling together in a stable, and falling down in a heap, without the fault of the plaintiff. *Held,* that the plaintiff's guaranty did not amount to an insurance of the lives of the cattle lost from such causes, and that she was not liable therefor.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

THURSDAY, JANUARY 21, 1892.

THIS is an action upon a written contract for the price therein named for keeping and feeding certain cattle by the plaintiff for the defendant, and for the value of four hundred and thirty bushels of corn, fed by the plaintiff to said cattle. There was a trial by jury, resulting in a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*Joy, Hudson, Call & Joy,* for appellant.

No appearance for appellee.

ROTHROCK, J. On the 30th day of September, 1886, the defendant delivered to the plaintiff one hundred and six two year old steers. The plaintiff undertook

to keep and feed said steers for one year, for which she was to receive five dollars for each animal. It appears from the record that the defendant delivered the cattle to the plaintiff in Woodbury county, and that the plaintiff, by her employes, removed them to the plaintiff's farm in Sioux county. The written contract entered into by the parties contained the following stipulation:

AGISTMENT; contract: construction.

"During the winter said cattle shall be provided with good and sufficient shelter, and shall be kept supplied with water, food, salt, etc., as they may need the same; their food to consist of good hay, also flax and oat straw, and they may also have the range of cornstalks when it is desirable for them to have such range; it being understood that said cattle are to be brought through the winter in as good condition as is possible, with the best of care and attention, without feeding grain otherwise than as aforesaid, by running in cornstalks, and feeding with flax and oat straw. While on the range in summer said cattle shall be carefully herded on good and sufficient pasture, it being expressly understood that said first party shall not be held responsible for rent for pasturage, but that the said compensation above provided shall be in full of all expenses involved in or connected with the care and keeping of said cattle during the year; and it is further understood that while so herded or upon the range during the summer said cattle shall be kept apart and away from all cows and heifers. It is further agreed that said second party hereby guarantees said first party against all loss among said cattle or damage to the same, except by unavoidable accident, happening without any fault or neglect of her servants, agents, and employes; and if any loss or damage occurs as aforesaid through unavoidable accident, and without the fault or neglect of said second party or her agent or employes, notice shall be given at once to said first party, and said cattle, if dead, shall be skinned by said

second party, and the hides saved for said first party;
and the said J. H. O'Keefe, agent of Elizabeth O'Keefe,
agrees upon his part to carry out the provisions of this
contract as such agent, and to.be personally responsi-
ble for the faithful performance of all its conditions.''

When the plaintiff returned the cattle at the end
of the year, there were but eighty-six of them.  Twenty
of the number died while in possession of the plaintiff.
The defendant claimed that the cattle died by reason
of the want of proper care upon the part of the plain-
tiff, and that, by reason of such improper and negligent
treatment, those returned were in very bad condition,
and that the defendant suffered very great damage by
reason of the failure of the plaintiff to perform the
written contract.  The defendant demanded judgment
against the plaintiff for a large amount of money by
way of counterclaim.  The jury returned a verdict for
the plaintiff for the sum of three hundred and eighty-
one dollars and seventy-five cents.  The verdict was
general, and it cannot be ascertained therefrom for
what reason the plaintiff's claim was reduced to that
amount; and, in view of the amount of the verdict,
it cannot be ascertained whether any allowance was
made to the plaintiff for the claim for the value of corn
fed to the cattle by the plaintiff.

It is claimed that the court erred in submitting the
claim for corn to the jury, because the evidence shows
that the plaintiff furnished the corn as a gratuity.  It
will be observed from the written contract that the
plaintiff was not required to feed any corn to the cattle.
It is probably true that the preponderance of the evi-
dence on that question is to the effect that the plaintiff
did not intend to make any charge for the corn at the
time.  But in view of the fact that she was under no
obligations to do so, and a letter of the defendant,
inquiring as to the price at which corn could be pur-
chased for the cattle, we incline to think the jury
were warranted in finding that the plaintiff intended to

feed what corn she had to spare of her own, and not such as she was under the necessity of purchasing.

The evidence as to the manner in which the plaintiff kept and cared for the cattle covers a wide range, and is in direct conflict. We need not set out or discuss the evidence. The impression made upon the mind after reading the record is that a jury might very fairly have found with either party, so far as liability on the contract is involved. The appellant claims that the evidence shows that but one of the cattle died by "unavoidable accident;" and that, as the plaintiff guaranteed the defendant against all loss or damage among said cattle except for "unavoidable accident," the jury should have found for the defendant for the value of nineteen, which were not lost by accident. It is claimed that nineteen of the steers died, and that no accident befell any of them. The plaintiff claims that, owing to the severity of the winter, and by reason of the poor condition of the cattle when she received them, the death of the cattle ensued, notwithstanding the best of care and an abundance of all the feed which the contract provided for, besides a large amount of corn fed to the weaker ones in the herd; and there is evidence to support the claim. We think the appellant claims too much for the words "unavoidable accident," as they are used in the written contract, when applied to the acts of the parties and the evidence in the case. There is evidence to the effect that when the plaintiff received the cattle they were in bad condition to endure the rigors of a severe winter, and that by reason of their condition many of them were weak and feeble, without any neglect of the plaintiff, and that a number of them died by reason of huddling together in a stable, and falling down in a heap. We think the plaintiff did not insure the lives of the cattle which were lost in this way. If she kept, fed, and attended to them as she was required by the contract, and some

of them died notwithstanding all proper care on her part, the death, while not caused by direct accident, was an inevitable loss for which the plaintiff was not liable.    Affirmed.